[Crim. No. 40524. Second Dist., Div. Five. June 30, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
WAYNE LEON LEWIS, Defendant and Appellant.

318

**COUNSEL**

Stephen Gilbert for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Otis D. Wright, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**HASTINGS, J.**—Appellant was charged with possession of phencyclidine (PCP) for sale, a violation of Health and Safety Code section 11378.5. He pled not guilty but later changed his plea to guilty pursuant to an agreement that he would receive no immediate state prison sentence. The guilty plea was set aside when, after reading the probation report, the court felt that it was not able to abide by the plea agreement.

Prior to trial, appellant brought a discovery motion seeking to obtain, in addition to other information, the home addresses of the two arresting officers. The motion was granted in part, but was denied with respect to the disclosure of the officers' addresses. Appellant then brought a motion to suppress evidence (Pen. Code, § 1538.5), which was also denied. Thereafter, it was stipulated that the issue of appellant's guilt or innocence could be determined by the court based on the testimony presented at the suppression hearing and upon certain additional stipulated facts. Appellant was found guilty and sentenced to state prison for the lower term of three years.

On appeal, appellant contends that the court erred in (1) refusing to order disclosure of the officers' home addresses, and (2) denying the motion to suppress evidence.

FACTS

On June 20, 1980, an anonymous caller telephoned the Compton Police Department and said that someone was selling "juice" (PCP) from a gray Cadillac near the corner of Matthisen and Cherry. The call was received by communications operator Dorothy Johnson and was relayed to Officer Edward Mason of the narcotics division. The caller told Officer Mason that the individual selling the "juice" was a male black wearing an orange tank-top shirt, gray sweat pants and white tennis shoes with blue stars on them.

Driving an unmarked police car and wearing plain clothes, Officer Mason and his partner, Sergeant Johnson, proceeded to the vicinity of Cherry and Matthisen Streets, where they observed appellant, whom they recognized from previous encounters, talking to a young woman seated in a car. Appellant was wearing the clothes described by the anonymous caller, and a gray Cadillac was parked nearby.

The officers approached appellant, identified themselves, and asked about the Cadillac. Appellant said that he had driven the car to that location and that it belonged to his brother, Byron. (Appellant owns a Cadillac, but it is green and white.) The officers told appellant about the information they had received in the anonymous telephone call, and asked him if they could search the Cadillac for PCP. Appellant gave permission for the search, removed the car keys from his pocket and gave them to Sergeant Johnson. Sergeant Johnson conducted a pat-down search of appellant at that time. Appellant and the two officers then proceeded in the police car to the Cadillac, from which Sergeant Johnson removed a green bottle containing an amber-colored liquid resembling PCP. After the officers recovered the bottle, they advised appellant of his *Miranda* rights which he waived. Appellant was subsequently arrested and transported to the Compton police station.

The defense presented two witnesses, appellant and James Merriweather, who was standing near Cherry and Matthisen when the officers arrived. Mr. Merriweather testified that the officers drove up to appellant, said something to him and then searched him. He did not hear the conversation. One of the officers patted appellant down and took something from his shoe, but returned it. The officers led appellant to the police car; the three then drove away and Merriweather did not see anything further because he walked away in the opposite direction.

Appellant testified that the officers did not introduce themselves but he recognized one of them as a police officer whom he had seen before. The officers approached him and said, "How are you doing, Wayne?" Sergeant Johnson then patted him down, took some money out of his sock but replaced it, and took the keys to the Cadillac from his pocket. The officers told him to get in the Cadillac and leave, and when he refused, they led him to the police car and drove towards the Cadillac, which Sergeant Johnson proceeded to search. Appellant stated that he never gave the officers permission to search the Cadillac, that the officers never told him his *Miranda* rights, and that he did not agree to talk to them. He was taken to the police station but was released until the contents of the bottle could be analyzed.

Officer Mason was called to the stand for rebuttal. He testified that appellant was twice advised of his rights, once in the police car after the bottle was recovered and once at the police station.

The stipulation filed prior to trial set forth the following additional facts and testimony: (1) The contents of the green bottle were analyzed at the Los Angeles County Sheriff's criminalistics laboratory and found to contain 260 milliliters of an amber liquid containing PCP. (2) Officer Mason was deemed to have testified that, after waiving his *Miranda* rights, appellant told the officers that he and an associate named Larry had sold about five ounces of PCP prior to the officers' arrival, that the glass bottle obtained from the vehicle contained ether and starter fluid which appellant and his associate were using to cut the PCP, which was located in the trunk of the car, and that the $621 in appellant's possession at the time of his arrest had been derived from selling PCP.

## DISCUSSION

■ 1. Appellant brought a pretrial discovery motion in which he sought to obtain, among other things, the home addresses of Officers Mason and Johnson. The stated reason for the request was that, since appellant and the officers had different versions of the events leading up to appellant's arrest, and appellant's counsel had "reason to believe" that the officers' version was untrue, the officers' credibility was a crucial issue in the case and the defense should be allowed to investigate their reputations within their home communities for possible impeachment purposes. The court allowed discovery of the other information requested but denied the motion with respect to disclosure of the officers' home addresses. Appellant contends that the court's refusal to order such disclosure deprived him of his right to confront and cross-examine witnesses (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15). We conclude that the trial court's ruling was correct.

The constitutionally guaranteed right to confront witnesses is not without limitations. One such limitation is where the disclosure of certain information about the witness, such as his residence address, would endanger the witness or his family. In California, the Legislature has seen fit to include peace officers within this protected group by enacting Penal Code section 1328.5, which provides: "Whenever any peace officer is a witness before any court or magistrate in any criminal action or proceeding in connection with a matter regarding an event or transaction which he has perceived or investigated in the course of his duties, where his testimony would become a matter of public record, and where he is required to state the place of his residence, he need not state the

place of his residence, but in lieu thereof, he may state his business address."[1]

This case presents the type of situation visualized by the Legislature when it enacted section 1328.5. It is not uncommon for criminal defendants and law enforcement officers to relate different versions of the events leading up to the defendant's arrest. The Legislature recognized the potential danger to which law enforcement officers and their families could be exposed if the officers were required to disclose their home addresses during the course of testimony, making such information available to discontented defendants and their associates.[2]

The court permitted extensive discovery in this case and the defense was allowed to conduct a thorough cross-examination of Officer Mason at the suppression hearing. However, disclosure of the officers' home addresses without their authorization is specifically foreclosed by section 1328.5. The court acted properly in denying the defense request for that information.

2. Appellant next contends that, even if we assume that his testimony was "incorrect," the court's denial of his motion to suppress was error because the officers did not have probable cause to detain him (*In re Tony C.* (1978) 21 Cal.3d 888 [148 Cal.Rptr. 366, 582 P.2d 957]), or conduct a pat-down search (*People v. Lawler* (1973) 9 Cal.3d 156 [107 Cal.Rptr. 13, 507, P.2d 62]), thus voiding his "alleged" consent to search the Cadillac. This contention is also without merit.

■ In a hearing on a motion under Penal Code section 1538.5, the superior court sits as the finder of fact. It has the power to judge the credibility of witnesses, weigh the evidence, and draw factual inferences therefrom. On appeal, all presumptions favor proper exercise of that power. (*People v. Superior Court (Keithley)* (1975) 13 Cal.3d 406, 410

---

[1]The policy of protecting the privacy of law enforcement officers is further reflected in Penal Code section 146e, which makes it a misdemeanor to publish, without authorization, the residence address or telephone number of a peace officer, and Vehicle Code section 1808.4, requiring the Department of Motor Vehicles to treat the home addresses of law enforcement officers as confidential information.

[2]Defense counsel implicitly acknowledged that such a danger existed when he attempted to work out a method by which the information would be disclosed only to a private investigator and/or defense counsel himself. Counsel's promise not to "send the defendant's friends out" was apparently in response to a declaration filed in opposition to the discovery motion, wherein a civilian employee of the Compton Police Department related two instances in which she and her son were threatened by appellant's friends.

[118 Cal.Rptr. 617, 530 P.2d 585].) Where, as here, the trial court's conclusions on a Fourth Amendment issue turn on issues of fact and credibility of witnesses, this court may not reweigh the evidence or draw inferences other than those reasonably drawn by the trial court, or substitute its own deductions for those of the trial court, if two or more inferences can reasonably be drawn from the facts. (*People* v. *King* (1977) 72 Cal.App.3d 346 [139 Cal.Rptr. 926].)

The real issue in this case was credibility. As defense counsel aptly put it, "If what the defendant says is so, the search is no good. If what the officers said is so, the search is good." In stating that it did not believe appellant's version of the facts, the trial court impliedly found that the officers had probable cause to detain appellant and that appellant consented to the search of the Cadillac. The court's finding is supported by substantial evidence and must be upheld.

The judgment of conviction is affirmed.

Ashby, Acting P. J., and Lavine, J.,* concurred.

A petition for a rehearing was denied July 28, 1982, and the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied August 25, 1982. Kaus, J., did not participate therein.

---

*Assigned by the Chairperson of the Judicial Council.